# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD WALTER,

        Plaintiff,

    v.

DAVID GAUVEY HERBERT, et al.

        Defendants.

Case No. 3:23-cv-02166-MEM
(Hon. Malachy E. Mannion)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS DAVID GAUVEY HERBERT AND NEW YORK MAGAZINE

**BALLARD SPAHR LLP**

Kaitlin M. Gurney (Bar No. 309581)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8585
gurneyk@ballardspahr.com

Chad R. Bowman (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1120
bowmanc@ballardspahr.com

Isabella Salomão Nascimento (*pro hac vice*)
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3281
salomaonascimentoi@ballardspahr.com

*Counsel for the Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ........................................................................1

STATEMENT OF QUESTIONS INVOLVED........................................3

FACTS ......................................................................................4

I.      THE PARTIES ..................................................................4

II.     THE CHALLENGED ARTICLE............................................4

        A.      The Article Meticulously Examines Walter's Background ..................5

        B.      The Article Accurately Summarized Court Cases Rejecting
                Walter's Fraudulent Expert Work .................................6

                1.      The Robie J. Drake Case...........................................6

                2.      *McGuffin v. Dannels et al.* .........................................8

                3.      The *Haynes* Decision ...............................................10

III.    THE AAFS INVESTIGATION ISSUED FIVE MONTHS LATER ..........10

IV.     THIS LAWSUIT ...............................................................12

ARGUMENT ...............................................................................12

I.      THE ARTICLE'S CHARACTERIZATION OF WALTER AS A
        "FRAUD" CONSTITUTES PROTECTED OPINION ...............12

II.     WALTER HAS NOT AND CANNOT PLEAD THAT THE
        ARTICLE IS MATERIALLY FALSE .......................................17

III.    WALTER HAS FAILED TO PLEAD FACTS THAT, IF
        PROVEN, WOULD ESTABLISH ACTUAL MALICE ..............20

CONCLUSION .............................................................................26

## TABLE OF AUTHORITIES

*Amelio v. McCabe, Weisberg & Conway, P.C.*, 2015 U.S. Dist. LEXIS
98378 (W.D. Pa. July 28, 2015) ................................................................5

*Bogash v. Elkins*, 176 A.2d 677 (Pa. 1962) .................................................13

*Bose Corp. v. Consumers Union*, 466 U.S. 485 (1984).............................. 25

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) ..................5

*Cassava Sciences, Inc. v. Heilbut*, 2024 U.S. Dist. LEXIS 3971 (S.D.N.Y.
Jan. 5, 2024)..............................................................................................15

*Coleman v. Ogden Newspapers, Inc.*, 142 A.3d 898 (Pa. Super. 2016)..................21

*Davis v. Rubin*, 2022 U.S. App. LEXIS 21284 (3d Cir. Aug. 2, 2022)..................24

*DeMary v. Latrobe Printing & Publ'g Co.*, 762 A.2d 758 (Pa. Super. 2000) ........ 24

*Dowling v. Phila. Newspapers, Inc.*, 1995 Phila. Cnty. Rptr. LEXIS 13
(Phila. C.C.P. Feb. 6, 1995) ....................................................................18

*Drake v. Portuondo*, 321 F.3d 338 (2d Cir. 2003)..................................... 1, 6, 7, 17

*Drake v. Portuondo*, 553 F.3d 230 (2d Cir. 2009)....................................1, 6, 7

*Earley v. Gatehouse Media Pa. Holdings, Inc.*, 2013 U.S. Dist. LEXIS
140631 (M.D. Pa. Sept. 30, 2013) ...........................................................22

*Eros Int'l, PLC v. Mangrove Partners*, 191 A.D.3d 465 (1st Div. 2021) ..............16

*Graboff v. Colleran Firm*, 744 F.3d 128 (3d Cir. 2014)...........................21

*Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657 (1989)............................ 24

*Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (D.C. Cir. 2016)..................................25

*Joseph v. Scranton Times LP*, 129 A.3d 404 (Pa. 2015) ........................................ 24

*Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162 (3d Cir. 2014)...............13

*Lee v. TMZ Prods. Inc.*, 710 F. App'x 551 (3d Cir. 2017) ................................21, 22

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) .......................... 18, 22

*McCabe v. Rattiner*, 814 F.2d 839 (1st Cir. 1987) ...................................15, 17

*McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352 (3d Cir. 2020)........*passim*

*Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974) ................................. 23

*Milkovich v. Lorain Journal*, 497 U.S. 1 (1990)......................................................13

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).....................................21, 25

*Parano v. O'Connor*, 641 A.2d 607 (Pa. Super. 1994) ...........................................13

*Patrick v. Daily Beast Co.*, 2023 U.S. Dist. LEXIS 90529 (E.D. Pa. May 24, 2023) ...........................................................................................................23

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993)...............................................................................................5

*Phantom Touring, Inc. v. Affiliated Articles*, 953 F.2d 724 (1st Cir. 1992)......14, 15

*Rapaport v. Barstool Sports, Inc.*, 2021 U.S. Dist. LEXIS 59797 (S.D.N.Y. Mar. 29, 2021)......................................................................................15

*Santillo v. Reedel*, 634 A.2d 264 (Pa. Super. 1993) .........................................18, 20

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012)..........22

*Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1988) ...................... 21

*Spelson v. CBS, Inc.*, 581 F. Supp. 1195 (N.D. Ill. 1984) ...................................... 15

*Sprague v. Porter*, 2013 Phila. Ct. Com. Pl. LEXIS 368 (Nov. 1, 2013)................ 21

*Sprague v. Walter*, 516 A.2d 706 (Pa. Super. 1986) ...............................................25

*St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309 (3d Cir. 1994) .............22

*State of Ohio v. Richard Haynes*, 1988 Ohio App. LEXIS 3811 (9th Ohio Ct. App. Sept. 21, 1988) .........................................................................10

*State of Ohio v. Roquemore*, 85 Ohio App. 3d 448 (10th Ohio Ct. App. 1993) .........................................................................................................10

*ToDay's Hous. v. Times Shamrock Commc'ns, Inc.*, 21 A.3d 1209 (Pa. Super. 2011) .......................................................................................18

Defendants David Gauvey Herbert and *New York* Magazine ("Defendants"), respectfully submit this Memorandum in support of their Motion to Dismiss Plaintiff Richard Walter's Complaint pursuant to Rule 12(b)(6).

## **INTRODUCTION**

Richard Walter professes to be a world-renowned forensic psychologist, with forty years of assisting local prosecutors and profilers at the FBI and Scotland Yard in "solving cold case crimes of the most heinous nature." Compl. ¶¶ 1, 16-18.

The U.S. Court of Appeals for the Second Circuit disagrees. In the case of Robie Drake, a teenager who Walter's expert testimony helped send to prison for decades, a blistering decision called the profiler "a charlatan, [whose] testimony was, medically speaking, nonsense," with "qualifications [that] were largely perjured." *Drake v. Portuondo* ("*Drake I*"), 321 F.3d 338, 340, 346 (2d Cir. 2003). Back on appeal in 2009 after Walter's deposition, the Second Circuit panel once again dubbed Walter a "charlatan" who "grossly exaggerated most of his qualifications and outright lied about some of them." *Drake v. Portuondo* ("*Drake II*"), 553 F.3d 230, 238, 245 (2d Cir. 2009).

In a nine-page, meticulously reported profile, "*The Case of the Fake Sherlock*," published in *New York* Magazine in April 2023, award-winning reporter David Gauvey Herbert distilled the *Drake* case decisions and other cold cases

Walter purported to have solved that are now undergoing new scrutiny. *See* Ex. 1

("the Article").  The Article's sub-headline states its fundamental question:

> Richard Walter was hailed as a genius criminal profiler at murder trials, at forensic conferences, and on true-crime TV.  In reality, he was a fraud. How did he get away with it for so long?

Walter now brings this lawsuit in an effort to punish Defendants for turning

the tables on Walter, the "celebrated criminal profiler," with the Article's

exhaustive review of how "America's fragmented criminal-justice system allowed

him to commit perjury in one state and move on to the next." Ex. 1. Asserting a

claim of false light invasion of privacy, the Complaint selectively ignores the court

decisions disputing his testimony and challenging his supposed expertise and

contends that, because of the Article, "Mr. Walter is now and forever labeled as a

'fraud.'" Compl. ¶ 5. Walter alleges that a self-serving investigation conducted by

the American Academy of Forensic Sciences ("AAFS"), after the Article was

published, demonstrates that Defendants were the ones "who have perpetrated a

fraud." *Id*. ¶¶ 24-27; Compl. Ex. A. Signaling his true gripe is that the Article did

not portray him in a *better* light, the Complaint contends the Article omitted

"critical facts" where "Mr. Walter's expertise resulted in convictions of

murderers." *Id*. ¶ 30. Walter is wrong on all accounts.

Walter's false light claim must be dismissed for three independent reasons

rooted in Pennsylvania law and the First Amendment.

**First**, the characterization of Walter as a "fraud" reflects a constitutionally protected opinion based on disclosed facts. The Article chronicles court filings expressing doubt and concern about his testimony and challenging the veracity of his alleged expertise. An opinion based on such disclosed facts is protected.

**Second**, even assuming the Article contains the errors that Walter contends, he does not (and cannot) challenge other facts in the Article supporting the inescapable conclusion that he is a "fraud." Because any statement on which a false light claim is based must, by law, be false, his claim fails on falsity grounds.

**Third**, Walter is required to plead facts that, if proven, would constitute clear and convincing evidence of "actual malice," i.e., that Defendants knew that he was no "fraud," but published the Article anyway. Because his Complaint does not and cannot plead any such facts, his claim fails.

## STATEMENT OF QUESTIONS INVOLVED

1. Whether Walter's claim fails as a matter of law because the challenged characterization of him as a "fraud" constitutes protected opinion based on disclosed facts.     *Suggested Answer:  Yes.*

2. Whether Walter's claim fails as a matter of law because he has not and cannot dispute that courts have held him to be a "fraud" and a "charlatan" who committed "perjury," and therefore he cannot establish the Article is materially false.     *Suggested Answer:  Yes.*

3. Whether Walter's claim fails as a matter of law because he has not and cannot allege facts that, if proven, would constitute clear and convincing evidence that Defendants published the Article with actual malice, as the First Amendment requires.     *Suggested Answer:  Yes.*

<h1 style="text-align:center"><u>FACTS</u></h1>

## I.     THE PARTIES

Richard Walter is a now-retired prominent forensic psychologist specializing in "solving difficult 'cold cases' related to heinous murders." Compl. ¶¶ 1-2, 14. According to his Complaint, he gained his expertise working for the Michigan Department of Corrections ("MDOC"), where he learned to "control" "disturbed and psychopathic inmates" using "various methods, including the use of a 'food loaf.'" *Id.* ¶ 15. He alleges he "frequently lectured" at the FBI's Behavioral Science Unit and Scotland Yard. *Id.* ¶¶ 17-18.

David Gauvey Herbert is an award-winning freelance journalist whose work has been featured in *New York* Magazine, *Esquire*, The New York Times, The New Yorker, and Bloomberg Businessweek.

*New York* Magazine is a biweekly print magazine also accessible online at www.nymag.com that has been part of Vox Media, LLC since 2019. In the five decades since it launched, it has received 49 National Magazine Awards and a George Polk Award, and was named Magazine of the Year on three occasions.[1]

## II.     THE CHALLENGED ARTICLE

The nine-page Article, "The Case of the Fake Sherlock," profiles Richard Walter and his well-documented history. It details Walter's upbringing and early

---

[1] *See* https://nymag.com/newyork/aboutus/.

work history, and notes his involvement in several forensic detective organizations, including the Vidocq Society,[2] AAFS, and *The Parents of Murdered Children*. *See* Ex. 1. Further, the Article accurately recounts high-profile cases in which Walter was thoroughly discredited as a forensic expert.[3] *Id.*

### A. The Article Meticulously Examines Walter's Background.

As both the Article and Walter's Complaint make clear, Defendants summarized the history of a man who "so fully inhabited the role of celebrated criminal profiler he appeared to forget he was pulling a con at all." *Id.* The Article includes interviews with local, state, and federal officials, a Vidocq Society member, a former MDOC colleague, a spokesman for the Michigan prison system, several victims of Walter's testimony, and their attorneys. *Id.* Further, as the Complaint notes, Herbert "drove to Montrose, Pennsylvania to attempt to interview Mr. Walter, as well as the local attorneys, bartenders, and the curator of the local

---

[2] The Vidocq Society touts itself as an all-volunteer organization of "forensic experts and investigators who serve as confidential consultants to assist law enforcement in solving difficult cold cases." *See* https://www.vidocq.org/#what-is.

[3] In addition to the Complaint, the Court properly considers documents attached to the Complaint, incorporated by reference therein, and matters of public record or subject to judicial notice. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). While the Court must accept "well-pleaded factual allegations in the complaint as true, it need not accept allegations that are internally inconsistent or [which] contradict matters of public record." *Amelio v. McCabe, Weisberg & Conway, P.C.*, 2015 U.S. Dist. LEXIS 98378, at **12-13 (W.D. Pa. July 28, 2015).

historical society, all in preparation for the article." Compl. ¶ 10. Indeed, the

Defendants learned and conveyed in the Article as much detail about Walter as

possible, down to the brand of cigarettes he favors, the car he drives, the flavor of

cookies he bakes, and the wine he drinks. *See* Ex. 1.

**B.    The Article Accurately Summarized Court Cases Rejecting Walter's Fraudulent Expert Work.**

**1.    The Robie J. Drake Case**

The Article highlights the case of Robie J. Drake, convicted of two counts of

second-degree murder. Ex. 1; *see Drake I*, 321 F.3d at 340. Walter was called as a

last minute "expert" to testify regarding a made-up syndrome of sexual dysfunction

that he used to account for nearly every fact in the case. *Drake II*, 553 F.3d at 232.

Walter's testimony addressed Drake's intent, the sole trial issue. *Id*. at 236.

What Walter testified to, the Second Circuit found in Drake's habeas appeal,

were "outright lie[s]" about his background. *Id*. at 238. For example:

- Walter testified that he had been employed with the L.A.County Coroner's Office, where he "had personal involvement with at least" 5,000, in which he "consulted with [agents of the state]" to "profil[e] for possible leads," i.e., "leads in terms of investigation for the resolution of the case," *id*. at 236, when in fact, he was a lab assistant responsible for cleaning and maintaining the forensic lab, and performed no criminal profiling whatsoever.  *Drake I*, 321 F.3d at 343.

- Although employed as a prison psychologist for the Michigan Department of Corrections, Walter actually practiced under a "limited license" because he did not have a doctorate degree in psychology. *Drake II*, 553 F.3d at 238.

- Despite asserting that he had served as an expert witness in "hundreds" of criminal trials, *Drake I*, 321 F.3d at 342, "Walter had in fact only testified *once* before the Drake trial, and not as an expert in psychology or criminal profiling," but "on a chain of custody issue." *Drake II*, 553 F.3d at 239.

- Walter testified that he only learned the facts of Drake's case the night before testifying, but that he was able to formulate his opinion so quickly because "it was not [a] difficult case." *Id.* at 236. This, too, was a lie, as Walter would later acknowledge; he had spoken to the prosecution and another witness about the case weeks prior. *Id.*

In two scathing decisions—both concluding that Walter committed perjury—the Second Circuit lambasted Walter and his deceptions, writing:

- "It is now clear that the expert's qualifications were largely perjured, and that the syndrome, dubbed 'picquerism,' is referenced nowhere but in a true-crime paperback." *Drake I*, 321 F.3d at 340.

- "The state trial judge . . . denied . . . the defense an opportunity to confirm counsel's grounded suspicion (later confirmed) that the witness was a charlatan, and that his testimony was, medically speaking, nonsense." *Id.* at 346.

- From the time the prosecution first contacted Walter, he had "weeks to conjure up his quackery." *Drake II*, 553 F.3d at 244.

Tellingly, Walter does not challenge the accuracy of Defendants' reporting on the *Drake* case. His Complaint dismisses his perjured testimony as "selected mistakes." Compl. ¶ 21.[4]

---

[4] After the Second Circuit's decisions, a number of academic Articles and media reports cited Walter as an example of fraud by an expert witness. *See* Charles Patrick Ewing, *False credentials cause extensive fallout*, Am. Psychological Ass'n (July/Aug. 2003) at 84, https://www.apa.org/monitor/julaug03/jn.html; Wendy J. Koen & C. Michael Bowers, *The Psychology and Sociology of Wrongful Convictions: Forensic Science Reform*, Academic Press (2018), at 32-34 (appearing as case study in "False Testimony and Forensic Fraud" chapter); Brent

## 2. *McGuffin v. Dannels et al.*

Also prominently featured in the Article is the case of Nicholas McGuffin, who was wrongfully convicted and served nearly a decade in prison based in part on Walter's "profiling." *See* Ex. 1. In 2000, Leah Freeman, who was dating McGuffin at the time, was abducted and killed. *Id.*; *see* SAC ¶¶ 21-22, *McGuffin v. Dannels et al.* ("*McGuffin*"), Civil No. 6:20-cv-01163-MK (D. Or. Jan. 27, 2023), Dkt 143. The case went cold for about ten years. *See* Ex. 1. According to the district attorney who prosecuted McGuffin, the Vidocq Society approached law enforcement, and Walter "conjured" a "profile" of a murderer that pointed to one suspect: McGuffin. *See McGuffin*, Dkt 136-3 ("Frasier Memo.") at 4-5; *McGuffin* SAC ¶¶ 106-09, 116, 120-21. McGuffin was arrested and ultimately convicted for Freeman's death. Nearly a decade later, the conviction was vacated based on undisclosed exculpatory DNA evidence. *Id.* ¶¶ 140, 153, 162-63, 168; Ex. 1.

In 2020, as the Article reports, McGuffin sued Walter for his part in the wrongful conviction. *See* Ex. 1. McGuffin alleges that law enforcement hired Walter precisely because "they knew [Walter] would be willing to" develop "a

---

E. Turvey, *Criminal Profiling: An Introduction to Behavioral Evidence Analysis* (5th ed. 2022) at 760 (appearing in "Pseudoexperts" subchapter, likening Walter's conduct to "a form of fraud"); Wayne Petherick & Nathan Brooks, "Where to From Here?," *Profiling and Serial Crime* (3d ed. 2014) at 248; Neale Gulley, "Jury finds Drake guilty in retrial of 1981 murders," Lockport Union-Sun & Journal (Mar. 24, 2010); Amy Wallace, "Drake a free man after 32 years," Lockport Union-Sun & Journal (Nov. 6, 2014).

'profile' that would falsely . . . link McGuffin to the crime," having done it before

in the *Drake* case, *McGuffin* SAC ¶¶ 106, 109-10. McGuffin's Complaint—filed

before the Article—alleges Walter's "fabricated" opinions were based on a "false

'profile'" that he "generate[d]" out of thin air. *Id.* ¶¶ 108-12, 116, 118, 120-21.

Walter was deposed in the *McGuffin* case in 2022. *See* Ex. 1; Compl. Ex. 1

at 21. As detailed in the Article, Walter claimed to be able to put inmates on a

"food loaf" diet, but did not recall keeping any records of doing so and did not

know how that responsibility would have fallen to him.[5] *Compare* Ex. 1, *with* Ex. 2

at 128:4-129:14. When it came to questions about his relationship with Scotland

Yard, Walter "could not recall the name of" a single inspector he had worked with

or any cases he had worked on there; indeed, he "appeared not to know that

Scotland Yard and the Metropolitan Police are, in fact, the same organization."

*Compare* Ex. 1, *with* Ex. 2 at 134:24-142:24.

In this case, Walter does not challenge the Article's accurate summary of his

deposition testimony. Rather, despite declining multiple opportunities to comment

before the Article's publication, he now challenges the alleged implication,

according to Walter, that he "lied about lecturing at Scotland Yard." Compl. ¶ 29.

---

[5] Excerpts of Walter's testimony were filed in the *McGuffin* case, *see McGuffin*
Dkts. 138-6, 141-1. The deposition was also discussed in the AAFS Ethics
Committee's letter to Walter announcing its investigation. Compl. Ex. A at 21-23.
For completeness, Defendants attach the full transcript of Walter's *McGuffin*
deposition hereto as Ex. 2.

### 3.     The *Haynes* Decision

The Article also cites *State of Ohio v. Richard Haynes*, a case in which

Walter "held himself out as a superstar in his field," but where his testimony and

qualifications were discredited. Ex. 1. An Ohio appellate court overturned a

homicide conviction based on Walter's testimony, calling it "troubling for many

reasons," not least of all because "[a]lthough Walter is a licensed psychologist, his

testimony was not related to psychology but to the field of criminal profiling," in

which he was not qualified as an expert. 1988 Ohio App. LEXIS 3811, at **5, 8-9

(9th Ohio Ct. App. Sept. 21, 1988).[6] Walter does not challenge the Article's

reporting on the *Haynes* decision.

## III.    THE AAFS INVESTIGATION ISSUED FIVE MONTHS LATER

*After* the Article was published, the AAFS received an ethics complaint from

an unknown source, accompanied by the Article, and launched an investigation

"because it accuses [Walter] of fraud and also makes the Academy appear

ineffective for not sanctioning him as a result of two previous complaints." Compl.

¶¶ 24-25, Ex. A at 1. The investigation confined itself to the past five years and

---

[6] In a decision expressly relying on *Haynes*, the conviction of Dennis Roquemore was also overturned after the appellate court similarly found "several problems" with Walter's "so-called expert testimony," including that it was not sufficiently based in science or fact and that Walter lacked the requisite qualifications.  *See State of Ohio v. Roquemore*, 85 Ohio App. 3d 448, 453-54, 455, 457-58 & n.7 (10th Ohio Ct. App. 1993).

Walter's deposition in the *McGuffin* case. Indeed, the AAFS Report acknowledges Walter's wrongdoing, but notes that "[m]uch of the misconduct alleged in the New York article occurred many years ago and was therefore outside the Committee's jurisdiction." *Id.* at 1, 8.

The AAFS Report examined just four paragraphs in the nine-page Article and concluded that three of them contain "factual errors." *Id*. at 1. With respect to the fourth paragraph reviewed, which discusses Walter's testimony in the *Drake* case about his work for the L.A. County Medical Examiner, the AAFS Report concedes, as it must, that the Article was "credible" and that Walter "gave false testimony in the *Drake* case." *Id.* at 7. It noted it was "highly unlikely" that Walter "consulted on 5,000 murder cases while working" there because "there were not [even] that many homicides during his tenure." *Id.*

The three purported errors the AAFS Report identifies in the Article are as follows:

- The Article includes an interview from a retired FBI agent, who said he once invited Walter to Quantico, but "the agents learned little, and he was not invited back." *Id.* at 2. According to a statement Walter submitted to the AAFS, however, a different FBI agent invited him to return to the FBI "numerous times." *Id.* The AAFS report then concludes that the Article's skepticism about Walter's relationship with the FBI "is not supported by evidence." *Id.*

- While the Article accurately recounts Walter's deposition in the *McGuffin* case, in which Walter testified he did not know where Scotland Yard was located, the AAFS Report alleges that paragraph is "suggesting, but not stating, that [the Scotland Yard] relationship was

a fabulation." *Id*. at 3. According to the Report, Walter submitted a letter from a friend who said Walter lectured at Scotland Yard "at least twice" and had lunch there, *id.*, which did not address whether his work for the organization was exaggerated.

- Although the Article questioned Walter's authority to "put inmates on a diet of 'prison loaf,' the AAFS Report found that "[f]ood loaf was and is a permitted punishment for prisoners in the MDOC system." *Id*. at 5. The Report does not address whether Walter, as a psychologist, was empowered to order a "food loaf."

The Complaint adopts and attaches the AAFS Report, asserting the AAFS's investigation was superior to Herbert's reporting for the Article. Compl. ¶ 25.

## IV.    THIS LAWSUIT

The Complaint alleges a single count of false light invasion of privacy. *See* Compl. ¶¶ 33-38. This claim is premised entirely on Walter's disagreement with the Article's use of the term "fraud," and his wish that the Article had also included more favorable references, such as to "the work [he] had done on behalf of the Meyer family in Florida." *Id*. ¶¶ 5, 30. The Court extended the deadline to respond to March 1, 2024. Dkt. 7. This Motion timely challenges the Complaint.

## ARGUMENT

## I.    THE ARTICLE'S CHARACTERIZATION OF WALTER AS A "FRAUD" CONSTITUTES PROTECTED OPINION

Walter's false light claim arises solely from the Article's use of the word "fraud." *See, e.g.*, Compl. ¶¶ 5, 21, 22, 23, 27. But only provably false statements of fact—*not* expressions of opinion—can serve as the basis for a false light claim. *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020)

(affirming dismissal of false light claim because challenged statements expressed "opinions based on disclosed facts"). Because characterizations of "fraud" are clear protected expressions of opinion, the Article is not actionable as a matter of both federal constitutional and state substantive law.

In *Milkovich v. Lorain Journal*, the U.S. Supreme Court explained that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." 497 U.S. 1, 20 (1990). Consequently, a statement is not actionable if it does not convey an objective fact, *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 167-68 (3d Cir. 2014), or if it represents a person's "subjective interpretation," *Parano v. O'Connor*, 641 A.2d 607, 609 (Pa. Super. 1994). In Pennsylvania, statements of opinion are protected under both the First Amendment and common law. *See, e.g.*, *Bogash v. Elkins*, 176 A.2d 677, 679 (Pa. 1962) ("Statements which represent differences of opinion or are annoying or embarrassing, are, without more, not libelous."). Whether a statement conveys objective facts or a subjective opinion is a threshold question of law for the court. *See, e.g.*, *Kerrigan*, 560 F. App'x at 168.

*McCafferty* is particularly instructive here. In that case, a minor sued *Newsweek* for defamation and false light over an article that quoted a professor saying that the "hard right" was using children, such as the plaintiff, to "defend[] raw racism and sexual abuse." 955 F.3d at 355-56. The Third Circuit affirmed the

13

dismissal of both claims, finding that the article was protected opinion because the plaintiff had not "shown that any of th[e] opinions imply [the existence of] undisclosed facts," and "[i]n any event, derogatory characterizations without more are not defamatory." *Id*. at 358. Where, as here, "an article discloses the underlying facts, readers can easily judge the facts for themselves," "the opinions expressed in [the] article are privileged." *Id*. at 357.

The First Circuit reached a similar conclusion in a case involving a publication that, like here, expressed its opinion that its subject was a "fraud." *Phantom Touring, Inc. v. Affiliated Articles*, 953 F.2d 724, 725 (1st Cir. 1992). There, the Phantom Touring Company ("Phantom Touring") produced a musical-comedy entitled "The Phantom of the Opera," sharing the same name as the hit Broadway show created by Andrew Lloyd Webber. *Id.* The Boston Globe published a series of articles questioning whether Phantom Touring sufficiently distinguished itself from the other, more famous "Phantom" to the ticket-buying public. *Id*. In one article, the Globe referred to the lesser-known production as the "Fake Phantom," and quoted a drama critic who described the show as "a rip-off, a fraud, a scandal, a snake-oil job." *Id*. at 726.

The First Circuit concluded that the articles constituted protected opinion, finding the challenged statements were "obviously protected hyperbole or are not susceptible of being proved true or false." *Id.* at 728. It explained "the breadth of

[the] articles, which not only discussed all the facts underlying [the author's] views but also gave information from which readers might draw contrary conclusions" led to its determination. *Id*. at 730. In other words, the author's "full disclosure of the facts underlying his judgment" made its characterization of "fraud" protected opinion.  *Id*.; *accord McCabe v. Rattiner*, 814 F.2d 839, 841 (1st Cir. 1987) (use of "scam" in headline was non-actionable opinion because it is "incapable of being proven true or false," and the article disclosed all facts on which opinion was based).

Indeed, courts have routinely held that characterizations of "fraud," like the one here, are non-actionable when the challenged publication discloses the bases for that characterization. *See, e.g.*, *Cassava Sciences, Inc. v. Heilbut*, 2024 U.S. Dist. LEXIS 3971, at *3-4, 12, 14 (S.D.N.Y. Jan. 5, 2024) (statements and website domain name calling plaintiff's business a "scam," "charade," and a "fraud" were non-actionable opinion based on disclosed facts); *Rapaport v. Barstool Sports, Inc.*, 2021 U.S. Dist. LEXIS 59797, at *33-36 & nn.14, 16, 18 (S.D.N.Y. Mar. 29, 2021) (statements calling plaintiff a "fraud," "hack," and "wannabe" were non-actionable opinion because "they are readily understood as inherently subjective assessments that are incapable of being proven objectively false" and the statements "do not imply that they are based on undisclosed facts"), *aff'd* 2024 U.S. App. LEXIS 556 (2d Cir. Jan. 9, 2024); *Spelson v. CBS, Inc.*, 581 F. Supp.

1195, 1198-99 (N.D. Ill. 1984) (statements calling plaintiff and others "quacks," "con-artists," and "practitioners of fraud" were statements of opinion based on disclosed facts); *Eros Int'l, PLC v. Mangrove Partners*, 191 A.D.3d 465, 466 (1st Div. 2021) (finding tweet describing subject as "a fraud," in context, was non-actionable opinion).

This analysis applies fully here. The Article based its characterization of Walter as a "fraud" on the ample public records documenting Walter's storied history of fraud, *see generally* Ex. 1, including:

- The details of Walter's perjured testimony about his credentials, and the made-up "picquerism" profile of the murder in question, as established in the Second Circuit's *Drake I* and *II* decisions;
- The details of McGuffin's wrongful conviction for Freeman's death, and Walter's key role;
- Walter's fraudulent testimony in the *Haynes* case, which once again involved inflating his credentials and resulted in the conviction being overturned;
- Walter's hypothesis that led to David Dickson's conviction for murder, but which is now being challenged in a post-conviction petition on the basis that Walter's theory—the lynchpin of the prosecution's case—was entirely fabricated; and
- Walter's own statements made in the course of depositions in the *Drake* case and in the ongoing lawsuit by McGuffin against him, captured in other articles and media interviews.

The overall tenor of the Article further supports the conclusion that its characterization of Walter as a fraud is protected opinion. When an article is written "in first person narrative style," "[t]his style of writing puts the reader on

notice that the author is giving his views." *McCabe*, 814 F.2d at 843. So too here. *See* Ex. 1 ("Walter refused several requests for an interview. 'You have earned one's distrust that merits severing any contact with you in the future,' he wrote me."); *id*. ("In December, *I* drove to . . . Montrose, Pennsylvania. . . . *I* dialed his landline. . . . *I* had wondered why Walter hadn't pursued the anonymity of a city[.]" (emphasis added)).

Finally, nothing in the Article implies that its "fraud" characterization was based on any undisclosed facts withheld from the reader. *See McCafferty*, 955 F.3d at 358 (citing *Veno v. Meredith*, 515 A.2d 571, 575 (Pa. Super. 1986); *Beckman v. Dunn*, 419 A.2d 583, 587 (Pa. Super. 1980)). It is therefore clear that the Article's characterization of Walter as a fraud is a protected expression of opinion under both the First Amendment and Pennsylvania common law.

## II.  WALTER HAS NOT AND CANNOT PLEAD THAT THE ARTICLE IS MATERIALLY FALSE

Even assuming that the characterization of Walter as a "fraud" could somehow be understood as a statement of fact, rather than a protected expression of opinion, the Article would be non-actionable for the separate reason that Walter cannot meet his burden to plead and prove that the Article is materially false. Walter challenges the accuracy of just three paragraphs in a 91-paragraph Article, replete with support for the overarching conclusion that Walter is a "fraud," or as the Second Circuit has twice held, a "charlatan." *Drake I*, 321 F.3d at 346.

"[I]n Pennsylvania, falsity means the same thing for false light as it does for defamation." *McCafferty*, 955 F.3d at 360. That is, a false light claim requires a "highly offensive *false* statement."  *Santillo v. Reedel*, 634 A.2d 264, 266 (Pa. Super. 1993); *see Dowling v. Phila. Newspapers, Inc.*, 1995 Phila. Cnty. Rptr. LEXIS 13, at *24 (Phila. C.C.P. Feb. 6, 1995) (dismissing false light claim because challenged news report was substantially true), *aff'd*, 665 A.2d 1304 (Pa. Super. 1995). As the Pennsylvania Superior Court explained in the analogous defamation context, "[t]he law does not require perfect truth, so long as any inaccuracies do not render the substance and 'gist' of the statements untrue." *ToDay's Hous. v. Times Shamrock Commc'ns, Inc.*, 21 A.3d 1209, 1215 (Pa. Super. 2011). Thus, a plaintiff cannot state a claim where the "gist" or "sting" of the challenged portions of the Article are substantially true, and a "statement is not considered false unless it would have a different effect on the mind of the reader" than the portions of the Article that are not challenged. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991) (cleaned up). This makes sense: a plaintiff cannot wordsmith a false light claim out of a few statements in a publication when the remainder of it conveys the same meaning and is not otherwise challenged.

Walter contends that the Article painted him in a false light as a "fraud" based on three minor portions of the Article—the "food loaf," and the FBI and Scotland Yard's reliance on his lectures, *see* Compl. ¶¶ 15-18, 29—which he

contends the AAFS Report established were false. Even assuming *arguendo* at this stage of the case that this is true, Walter does not challenge other statements in the Article that carry the same "gist" or "sting." Walter does not challenge:

- Any part of the Article's reporting on his perjured testimony in or the Second Circuit's decisions in the *Drake* case;

- That McGuffin's conviction was overturned based on exculpatory DNA evidence, discrediting Walter's theory that McGuffin was the killer;

- That Walter inflated his qualifications while serving as an expert in the *Haynes* case, which was later overturned based solely on problems the Ohio appellate court found with Walter's testimony;

- That the conviction of David Dickson, premised on Walter's theory that he was a killer with a foot fetish, was being reviewed;

- The statement by a Texas police officer that Walter was of no help on their case because he was fixated on the idea that the case involved "some kind of sexual deviancy or homosexuality, which I disagreed with";

- That, although Walter claims Michigan State hired him as an adjunct and to investigate an on-campus case, Michigan State denies Walter was ever employed by the school;

- That, in a 2019 case on which he consulted, he fell asleep while watching interrogation tapes from the case, and when he awoke "he was sure the suspect from the first tape was the murderer," but shortly after changed his opinion, pinning the murder on the victim's father.

*See* Ex. 1. Because removing the three allegedly inaccurate paragraphs in the Article would not change its unchallenged "gist"—*i.e.*, that Walter is a "fraud"— his false light claim fails as a matter of law.

Walter's core contention appears to be not that the Article cast him in a *false* light, but that he wishes it cast him in a *better* light. *See* Compl. ¶ 21 (alleging

Defendants "excluded scores of Mr. Walter's successes in the most challenging cases [and] used selected mistakes Mr. Walter made in previous deposition testimony"). But, as the Pennsylvania Superior Court explained in *Santillo*, such complaints are not actionable. In that case, a former police officer who had run for the office of district justice in Montgomery County asserted a false light claim based on reporting about an incident in which he had been accused of making unwanted sexual advances toward a teenager. 634 A.2d at 265. The plaintiff did not dispute the reported facts regarding the incident, but nonetheless insisted that he had been cast in a false light because, when representatives of his police department discussed in the article his resignation from the police force, no mention was made of the fact that he "also received commendations as a police officer." *Id.* at 266-267. The court held that a false light claim cannot rest simply on a defendant's decision not to recount the facts in a manner that would have cast the plaintiff in a better light. *Id.* The same reasoning applies here: where the facts are accurately reported, there is no falsity, and any false light claim fails.

## III.   WALTER HAS FAILED TO PLEAD FACTS THAT, IF PROVEN, WOULD ESTABLISH ACTUAL MALICE

Walter must, under both Pennsylvania and First Amendment law, plead *facts* that, if proven, would establish by clear and convincing evidence that the Defendants released the Article with actual malice, *i.e.*, with knowledge that the Article contained false statements of fact or with a high degree awareness of that

the Article's statements were probably false, yet publishing them anyway. *McCafferty*, 955 F.3d at 360 (dismissing false light claim for failure to plead actual malice). Because Walter has not, and cannot, do so, his false light claim fails for this independent reason.

To prevail on a false light claim, a plaintiff must show that a defendant acted with actual malice—that is, "with knowledge or in reckless disregard" of the falsity of the matter at issue. *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014). This is identical to the "actual malice" standard set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), which governs defamation claims. *See, e.g.*, *Coleman v. Ogden Newspapers, Inc.*, 142 A.3d 898, 905-06 (Pa. Super. 2016) (false light claim requires same showing of actual malice in public-figure defamation claims); *Sprague v. Porter*, 2013 Phila. Ct. Com. Pl. LEXIS 368, at *69-70 (Nov. 1, 2013) (same), *aff'd*, 2014 Pa. Super. Unpub. LEXIS 1659 (Aug. 26, 2014).

The actual malice "standard is a subjective one, based on the defendant's actual state of mind." *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1089 (3d Cir. 1988). That is, the Defendants must have "*actually* doubt[ed] the veracity of the article." *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017) (citation homitted). In addition, the concept of actual malice "should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."

*Masson*, 501 U.S. at 510. As the Third Circuit has instructed, "'neither . . . ill will, bias, spite, nor prejudice . . . [is] sufficient to establish either a knowledge of the falsity of, or a reckless disregard of, the truth or falsity of the materials used.'" *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1317 (3d Cir. 1994).

In order to state a viable claim, a plaintiff is required to plead more than "actual-malice buzzwords." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012). Rather, they "must lay out enough facts" to "show the existence of actual malice is plausible on its face." *Earley v. Gatehouse Media Pa. Holdings, Inc.*, 2013 U.S. Dist. LEXIS 140631, at *5-6, 15-16 (M.D. Pa. Sept. 30, 2013) (cleaned up). When a plaintiff fails to satisfy this "onerous task," *id*. at *16, the claims must be dismissed. *Lee*, 710 F. App'x at 560 (affirming dismissal of defamation claim for, *inter alia*, failure to plausibly plead actual malice).

Each of Walter's attempts to plead actual malice is legally insufficient. ***First***, throughout his Complaint, Walter asserts, in conclusory fashion, that the Defendants acted "reckless[ly]," "entertained serious doubts" about the Article, and knew their reporting was false. Compl. ¶¶ 21, 22, 28; *see id*. ¶ 31 (alleging generally that the Defendants published "with actual malice and with reckless disregard for the truth"). These rote incantations of the actual malice standard are insufficient as a matter of law. *See, e.g.*, *McCafferty*, 955 F.3d at 360 (affirming dismissal of false light claim for failure to plead *facts* establishing actual malice);

*Patrick v. Daily Beast Co.*, 2023 U.S. Dist. LEXIS 90529, at *6 (E.D. Pa. May 24, 2023) (false light complaint including "words like 'reckless,' 'malicious,' and 'knowingly false' in almost every paragraph" dismissed for failure to plead actual malice because "it lack[ed] the facts to support these legal conclusions").

**Second**, Walter argues that the Defendants acted with actual malice because they "intentionally excluded" and "ignored" purported examples of Walter's successes in solving cold cases, offering two such examples: his involvement with *The Parents of Murdered Children* and his work "on behalf of the Meyer family." Compl. ¶¶ 19, 21, 30. Setting aside that the Article makes several mentions of Walter's involvement with *The Parents of Murdered Children*—including Walter's speaking engagements with them and his involvement with the board, *see* Ex. 1—there is no basis in law for Walter's belief that failure to include a plaintiff's preferred narrative is evidence of actual malice. In fact, the Supreme Court has said, in no uncertain terms, that "[t]he choice of material to go into a [Article] . . . constitute[s] the exercise of editorial control and judgment" fundamentally protected by the First Amendment and left to the discretion of publishers. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

**Third**, Walter resorts to accusing the Defendants of "fabricat[ing]" unspecified statements in the Article. Compl. ¶ 29. This is a conclusory allegation that cannot support a finding of actual malice. Moreover, it is flatly contradicted by

the exhaustive and probing reporting undertaken by the Defendants, as spelled out in both the Article itself,[7] which carefully catalogues the myriad public records and sources on which it relies, and Walter's own Complaint, which details the extensive investigative efforts taken by Herbert, including traveling to Montrose "to interview many Pennsylvanians [to] collect information that was used" in the Article. *Id.* ¶¶ 7, 10, 13.

**Fourth**, although Walter claims the Defendants should have credited his denial of the Article's substance, *id.* ¶ 18, as a matter of settled law, the failure to credit a subject's denial is not actual malice as a matter of law. *See Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 691 n.37 (1989).

**Fifth**, Walter contends that the Defendants' intent was "to destroy Mr. Walter's reputation" and "to twist the facts to harm Mr. Walter." Compl. ¶¶ 3, 30. Yet, these mischaracterizations of the Defendants' journalistic motivations, even if proven, would not support a finding of actual malice. That is because the actual malice standard "is not met through a showing of ill will or malice in the ordinary sense." *Joseph v. Scranton Times LP*, 129 A.3d 404, 436-37 (Pa. 2015). Rather, "[a]ctual malice focuses on the defendant's attitude toward the *truth*." *DeMary v. Latrobe Printing & Publ'g Co.*, 762 A.2d 758, 764 (Pa. Super. 2000) (emphasis

---

[7] Where a plaintiff's "own exhibits contradict [the] allegations in the complaint," such as here, "the exhibits control." *Davis v. Rubin*, 2022 U.S. App. LEXIS 21284, at *4 (3d Cir. Aug. 2, 2022).

added). Accordingly, even evidence that a defendant "has a 'vendetta'" and was

"'obsessed' with seeking retribution" against the plaintiff cannot support a finding

of actual malice. *Sprague v. Walter*, 516 A.2d 706, 725 n.18 (Pa. Super. 1986);

*accord Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 596 (D.C. Cir. 2016) ("the mere

presence of some ulterior motive—[including] a personal desire to harm the

subject of a story—is not enough to support a finding of actual malice").

 ***Finally***, Walter points the Court to the AAFS Report, released five months

after the Article was published, as if probative of Defendants' state of mind. *See*

Compl. ¶¶ 24-26; *id.*, Ex. 1. Even if the AAFS Report refuted the Article's

reporting (which it does not), such "evidence" is quickly disregarded as improper

and irrelevant, because actual malice turns on whether a defendant had knowledge

of falsity or a high degree of awareness of probable falsity *at the time of*

*publication*. *See Sullivan*, 376 U.S. at 286 ("The statement does not indicate malice

at the time of the publication."); *Bose Corp. v. Consumers Union*, 466 U.S. 485,

512 (1984) (finding author's refusal to admit mistake did "not establish that he

realized the inaccuracy at the time of publication").[8]

 In sum, Walter has failed to provide this Court with *any* facts that could

support a finding of actual malice.

---

[8] For the same reason, Walter's contention that the Defendants refused to correct the Article when confronted with additional information after publication, Compl. ¶ 4, is not probative of actual malice.

## CONCLUSION

The Defendants respectfully request that the Court dismiss the Complaint with prejudice, as amendment would be futile.

Dated: March 1, 2024

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/Kaitlin M. Gurney*
Kaitlin M. Gurney (Bar No. 309581)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8585
gurneyk@ballardspahr.com

***Counsel for the Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2024, a copy of the foregoing was served upon all parties of record via the Court's CM/ECF system.

*/s/ Kaitlin M. Gurney*
Kaitlin M. Gurney

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8

I hereby certify that the foregoing memorandum of law complies with the requirements of Local Rule 7.8 and this Court's Order granting the parties' joint request for an enlargement of pages up to 30 pages.

*/s/ Kaitlin M. Gurney*
Kaitlin M. Gurney