IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD WALTER** <br> 425 Lake Avenue <br> Montrose, PA 18801 <br>                                       Plaintiff, <br><br> v. <br><br> **DAVID GAUVEY HERBERT** <br> New York Magazine <br> 75 Varick St., 4th Floor <br> New York, New York 10013 <br><br>     and <br><br> **NEW YORK MAGAZINE** <br> 75 Varick St., 4th Floor <br> New York, New York 10013 <br><br>                                       Defendants. | **NO: 3:23-cv-02166-MEM** <br><br> **JURY TRIAL OF SIX DEMANDED** <br><br> **PLAINTIFF'S AMENDED COMPLAINT** |

"…serious misfortunes, originating in misrepresentation, frequently flow, and spread, before they can be dissipated by the truth[1]."

## I.    INTRODUCTION

1. Richard Walter has, for over forty years, assisted local, state and federal officers – and has lectured internationally – regarding solving cold case crimes of the most heinous nature.

2. Due to his decades of international expertise in this area of forensics, The American Academy of Forensic Sciences has bestowed upon him Fellow status.

3. However, Mr. Walter has been long retired; now in his 80's, he has sought to live his remaining years in Montrose, Pennsylvania, outside of the public eye.  In spite of that, Herbert chose to write this misleading piece, based upon decades-old, refuted

---

[1] George Washington to John Jay, 8 May 1796, writing about "abettors of pernicious measures" who "disseminate the poison" greater than those good people who attempt to furnish the antidote.  This lawsuit is the antidote to these defendants' poisonous and malicious article about Mr. Walter.

**THE BEASLEY FIRM, LLC**
1125 WALNUT STREET
PHILADELPHIA, PA  19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

1
_____
**WALTER V. HERBERT, ET AL.**
**AMENDED COMPLAINT**

claims, in order to further Herbert's future business and movie plans at the expense of Mr. Walter's reputation and peace.

4.  Regrettably, as revealed in this Amended Complaint and exhibits, Herbert and New York Magazine filled this story with misleading claims and outright lies about Mr. Walter via their deeply flawed and biased article, "[T]he Case of the Fake Sherlock."[2]

5.  In preparation for writing this piece, Herbert's evidence of ill will towards Mr. Walter and his aversion to the truth is apparent by his intentionally withholding many necessary facts from the reader, in order to create a false impression about Mr. Walter.  And while these nondisclosed facts are more detailed in the body of this Amended Complaint, a cursory review of some of the most obvious nondisclosed, known facts are identified here.  For example, Herbert knew and withheld that:

- Mr. Walter's involvement as one of the members of the forensic team attempting to identify suspects to various crimes, and his skills as relating to crime scene assessment, has resulted in the positive profiling of many murderers, including solving the infamous John List case.  List was the man who murdered his wife, mother, and three children.  For 18 years, this was an unsolved murder, yet Mr. Walter's assessment of the crime scene and the likely characteristics and habits of Mr. List, to the detail of the type of glasses List would be wearing, assisted law enforcement in List's arrest and conviction; Herbert knew this and intentionally refused to disclose these extraordinary facts, or any other of Mr. Walter's successful assessments that a five minute google search reveals;

- Herbert spends considerable time attacking and falsely presenting Mr. Walter for using, as part of his evaluation of the crime scene and behaviors of potential suspects, a subset of behaviors known as Picquerism in the classification of killers involved in sexual murders.  Herbert knew that Picquerism is an accepted, peer reviewed, well understood subset of behaviors of the murderer in the Anger-Excitation Rape-Murder crime classification.  Specifically, as identified in Exhibit "C," *Profiling Killers: A Revised Classification Model for Understanding Sexual Murder*, Int's Journal of Offender Therapy and Comparative Criminology, 43(4), 1999 417-437 (Keller,

---

[2] This article, with commentary, is attached to Exhibit "A."  It is also attached (without commentary) to the AAFS report, Exhibit "B".

**The Beasley Firm, LLC**
1125 Walnut Street
Philadelphia, PA  19107
215.592.1000
215.592.8360 (fax)
www.beasleyfirm.com

2

_____
**Walter v. Herbert, et al.**
**Amended Complaint**

Walter). Herbert further knew that Walter has published peer reviewed studies on this, and indeed another five minute google search reveals this. Yet, Herbert mislead the readers into believing that Walter's application of the concept of Picquerism was unsupported by any scientific literature or evidentiary support, relying on an uninformed, twenty year old court opinion that he neither attempted to correct, nor identified its obvious error regarding Picquerism, withholding the truth about this Picquerism phenomenon. Herbert was further informed by the commentary to his article that his misleading claims of picquerism were wrong, yet he did nothing to correct this obviously false and misleading presentation of Mr. Walter.

- Herbert knew – when he wrote the article, and certainly after its publication when the avalanche of facts were written in the comments to attempt to correct Herbert's outright lies – that Mr. Walter's work with and in the Michigan State prison system provided Mr. Walter significant access to countess murderers, and the data behind the murders, which formed one of the pedestals of his expertise into crime scene assessment. Rather than correctly identifying Mr. Walter's actual role in the Michigan State Prison System, Herbert refused to disclose the truth of Mr. Walter's substantial experience with violent offenders and murders that led to much of the basis of his expertise in crime scene assessment and characteristics of the various behaviors;

- Herbert knew – and withheld from the readers – in order to falsely portray Mr. Walter as a liar or a "con", that many of the techniques used in the Michigan State Prison System to manage and control the most violent criminals were indeed employed by Mr. Walter, as part of his duties as a psychologist at the Michigan Intensive Program Center (MIPC), responsible for the treatment, rehabilitation, and control of the 88 "most dangerous, assaultive, and anti-social convicts in Michigan," from 1978 – 1986.

- Herbert knew – when he wrote the article – that Mr. Walter's work had been referenced in textbooks, treatises, and other authoritative works, including *Practical Homicide Investigation, Tactics, Procedures and Forensic Techniques*, 4th Ed., Geberth, 2006, *Signature Killers, Interpreting the Calling Cards of the Serial Murderer*, Keppel, Ph.D., 1997.

- Herbert also knew that Mr. Walter had indeed lectured at, among other international locations, Scotland Yard, yet he falsely portrayed that Walter lied about that. The attachments to the AAFS report confirm the truth of this, and even to this day Herbert has refused to correct this lie he published and republished.

- Rather than correcting these knowing errors, and the intentionally withheld/nondisclosed facts known to Herbert, these defendants reposted this article on their social media feeds after unequivocally knowing the article was false, to further the damage done to Mr. Walter.

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

3
_____
WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

- In sum, Herbert knew, both at the time he finalized this article, after it was published when the torrent of comments correcting his knowing falsehoods were presented, and after this lawsuit was filed, with the exhibits attached to the initial Complaint credibly refuting any questions Herbert might have had as to the truth of his article. Yet Herbert has refused to issue a correction, retraction, or anything to prove that he was just neglectful in his writing, as opposed to following the basic ethical standards attributable to all journalists to "gather, update and correct information throughout the life of a news story" or to "[A]cknowledge mistakes and correct them promptly and prominently" and "[E]xplain corrections and clarifications carefully and clearly." Herbert's violation of the *Society of Professional Journalists' Code of Ethics*, Exhibit "D," is further evidence of these defendants' malice, intent to harm, and reckless journalism.

6. Herbert wrote this article stating facts about Mr. Walter – not opinions, even though Herbert now attempts to hide behind the porous shield of opinion. This article is not "opinion" but instead misguided and intentionally skewed "facts" designed to harm Mr. Walter.

7. Herbert's malice and ill will towards Mr. Walter is further evidenced by the fact that his accusations are, in large measure, decades old and done solely to harass and punish this elderly man, for Herbert's own goals in furtherance of other business deals, such as movies and profit.

8. Herbert's actions in writing this article in spite of facts known to him and withheld from the reader, and his refusal to follow any journalistic standards to correct the knowing falsehoods plainly identified to him from his own research, the commentary to the article, and the AAFS report with exhibits upon receipt of the initial complaint, are done solely to harm Mr. Walter and for Herbert's own desires for future profit at Mr. Walter's expense.

9. In addition to the summarized facts that Herbert knew and failed to disclose to the readers, defendant Herbert was specifically informed – in interviews and discussions with others who have used Mr. Walter's expertise – by people such as Mike

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA  19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

4
_____
WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

Rodelli that he had to not only provide a balanced story on Mr. Walter, but to also include those facts that revealed the truth about Mr. Walter. Indeed, in the commentary on the defendants' website, posted long before this lawsuit was filed, Mr. Rodelli wrote:

> I interviewed with this reporter earlier this year and just now stumbled onto this article. While I made it clear that Richard may not be an angel, I emphasized to the reporter that he absolutely had to balance the article (advice he apparently did not heed) with the things that Walter got right. I did mention to him the fact that piquerism is an accepted profiling term today and that all you have to do is Google it. Walter was apparently too far ahead of his time for the courts in 1982, although I have always conceived of piquerism as being done with a knife, not a firearm. (But that is likely more of a reflection of my limited knowledge of profiling than anything else.) Too bad Mr. Herbert does not mention this fly in his ointment. He also does not mention me once in his article, maybe because I had things to say that were contrary to his thesis.
>
> . . . .
>
> I learned many years ago (and in a very hard way) that a reporter must balance his story for fairness. It is worth noting that Mr. Herbert does not even mention Walter's remarkable profile of John List in this piece, a profile which nailed the family mass murderer down right to the type of glasses he'd be wearing over twenty years after he committed his crimes. As I recall, Walter also said that initially List would move hundreds of miles away from NJ (he went to Denver) and then after twenty or so years, move to within ~300 miles of the crime scene. List had moved to Richmond, VA. I guess giving credit where it is due is not part of Mr. Herbert's MO.

10.  Other comments to the article repeated Herbert's outright lies and Herbert's refusal to follow any journalistic standards and correct and acknowledge his errors. Peter Stephenson, Ph.D. wrote the following, again months before this lawsuit was filed (emphasis added):

> First, I have known and worked with Mr. Walter for decades. I am a cyber criminologist with a PhD in digital investigation. I have authored or contributed to over 20 books on technology-related topics, have published hundreds of articles in technical and trade magazines, and published 18 peer-reviewed papers. Mr. Walter and I have presented peer-reviewed research on more than one occasion at the American Academy of Forensic Sciences. I taught digital forensics for over 10 years at the university level. **Your article**

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

5

WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

**is substantially wrong in many respects and may be slanderous in some.**

I reviewed all of the issues surrounding the Drake case for Mr. Walters and found many errors. He was advised, however, that he did not have standing to do anything about correcting the errors.

I also did a statistical analysis of Mr. Walters' methods using over 1,000 actual cases in which he did not participate (the HITS database in Washington state). That winnowed down to about 800 complete cases after doing some analysis to weed out those without enough data, etc. I found that, applying Mr. Walters' methodology to those cases - all of which had been solved - resulted in substantially the same outcome as the physical investigation and prosecution.

One very important point that you make that is a major error: Mr. Walter is not, nor has he claimed, to my knowledge, to be, a "criminal profiler". His technique is referred to as crime (or, sometimes, crime scene) assessment. The two are very different.

Because he is a controversial figure, Mr. Walter attracts attacks such as yours. Because what he does and developed along with another experienced investigator, Robert Keppel, is somewhat arcane, it often is not well understood by lay persons. I fact-checked the Drake case accusations some years back and my empirical analysis of the Keppel-Walters methodology of crime classification also was done several years back. I am in the process of fact checking your article and I will submit the fact check for publication when it is complete.

11. As part of Herbert's plan to malign Mr. Walter, his only "fact checking" was to give "24 hours" for people to review this long article, comment, and report to Herbert. That is more evidence of an attempt to claim fairness when in reality furthering the malicious goals of this hit piece.

12. This commentary from those with whom defendant Herbert spoke about Mr. Walter, and Hervert's and New York Magazine's failure to have disclosed facts that contradicted the substance of their article, was designed to harm Mr. Walter, place him in a false light, and mislead the readers, all causing him additional harm.

13. The false light into which Mr. Walter has been placed by these defendants has caused significant damage and harm to him; and when the defendants were

**THE BEASLEY FIRM, LLC**
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

6
_____
WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

confronted with the facts known to them and asked to correct this misleading article, they refused.

14. To the average reader, Mr. Walter is now and forever labeled as a "fraud," and his decades of work forever stained, as intended by these defendants. This lawsuit now follows.

## II. PARTIES

15. Richard Walter is a retired forensic psychologist who resides at the above address. Mr. Walter did not thrust himself into this controversy in order to influence or otherwise use the media to shape any of what these defendants have maliciously propagated via the article at issue.

16. Defendant David Gauvey Herbert (Herbert) purports to be an author and wrote the at-issue piece as an agent, servant and/or employee of co-defendant New York Magazine. At all relevant times during the preparation of this piece, Herbert purposefully traveled into this jurisdiction to interview many Pennsylvanians and collect information that was used (or was excluded) from the article at issue.

17. Defendant New York Magazine purports to be a "beloved and influential" publication, with a "global" audience. It has an address identified above, and has as its agent, servant and/or employee defendant Herbert.

## III. JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332. The Defendants are citizens of states other than which the Plaintiff is a citizen. The amount in controversy substantially exceeds the requirement for Federal Diversity Jurisdiction and to guarantee a jury trial, exclusive of interest and costs.

The Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107
215.592.1000
215.592.8360 (fax)
www.beasleyfirm.com

7
_____
WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

19. These defendants are subject to this Honorable Court's authority to exercise specific jurisdiction over the defendants because Herbert, on behalf of defendant *New York* Magazine, specifically traveled to Pennsylvania to interview Pennsylvania residents and collect information from Pennsylvania sources for this article. Herbert drove to Montrose, Pennsylvania to attempt to interview Mr. Walter, as well as the local attorneys, bartenders, and the curator of the local historical society, all in preparation for the article at issue in this lawsuit.

20. Further basis for this Honorable Court to exercise its jurisdiction is that the Defendants have targeted their specific statements, publications, and tortious conduct at issue in this action directly toward Pennsylvania residents, including those in Mr. Walter's community and in Susquehanna County, Pennsylvania, and the Commonwealth of Pennsylvania.

21. This Honorable Court has jurisdiction over these defendants as the False Light into which these defendants placed Mr. Walter is an intentional tort, Mr. Walter has and continues to feel the brunt of the defendants' malicious article in his community in Montrose, Pennsylvania, which is the focal point of the harm suffered by Mr. Walter. Further, via the defendants' actions in Montrose and the subsequent article, the tortious conduct was aimed into Mr. Walter's community in Montrose, Pennsylvania making it the focal point of their malicious article and its false light presentation of Mr. Walter to his entire community.

22. Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants are subject to the Court's personal jurisdiction with respect to the civil action in question. The Defendants traveled into the Middle District of Pennsylvania, including Susquehanna County, to interview many people and come directly to Mr. Walter's

**The Beasley Firm, LLC**
1125 Walnut Street
Philadelphia, PA 19107
215.592.1000
215.592.8360 (fax)
www.beasleyfirm.com

8

WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

house, and published their defamatory statements in, among other places, Susquehanna County, Pennsylvania where they targeted their unlawful scheme.

IV.   **FACTS**

23. As noted in the introduction and Exhibit "B," Mr. Walter is a forensic psychologist, retired in 2000, who has assisted various law enforcement agencies in solving difficult "cold cases" related to heinous murders.

24. Much of Mr. Walter's decades of experience began at the Department of Corrections in Michigan, where he was able to study the mindset of many highly disturbed and psychopathic inmates. Part of this experience included learning how to control such individuals via various methods, including the use of a "food loaf."

25. Mr. Walter's expertise and experience also included long-term collaboration with FBI special agent Robert Ressler, a principal and founder of the FBI's Behavioral Science Unit (BSU), to develop methods of psychological profiling of the most hardened criminals and psychopaths.

26. Mr. Walter frequently lectured and attended lectures at the BSU, working with internationally renowned psychologists and psychiatrists who specialize in studying psychopaths, developing criminal profiles for murders, even creating various categories for homicide investigators to hunt down these criminals and obtain justice for the murdered and their families.

27. Mr. Walter's vast expertise in this level of psychological profiling resulted in invitations to lecture and work on cold cases with investigators in the United Kingdom, including those at Scotland Yard and the University of Leichester, training the post-graduate students in the art of forensics. These facts were known to Herbert, yet his article claims that these are lies.

**The Beasley Firm, LLC**
1125 Walnut Street
Philadelphia, PA  19107
215.592.1000
215.592.8360 (fax)
www.beasleyfirm.com

**9**
_____
**Walter v. Herbert, et al.**
**Amended Complaint**

28. Mr. Walter's actions in assisting local, state, and federal authorities to profile and ultimately find these murders also resulted in his being involved with *The Parents of Murdered Children*, and, for example, the work Mr. Walter had done on behalf of the Meyer family, whose daughter and grandchildren were murdered, were wholly ignored by Herbert and New York Magazine, for this fact, and others, would destroy the maligned predicate upon which their article was based.

29. In spite of the above facts, easily knowable to anyone choosing to honestly write about Mr. Walter, the defendants instead chose to ignore the above information – and more – to target Mr. Walter and destroy his reputation and place into question all of the work helping families and law enforcement solve the otherwise unsolvable cold cases.

30. In propagating their knowingly false claims of fraud, these defendants intentionally failed to disclose scores of Mr. Walter's successes in the most challenging cases, used selected mistakes Mr. Walter made in previous deposition testimony, and intentionally eliminated easily available information known to them to place Mr. Walter in a false light and make the malicious accusation of being a fraud in the headline of this false story.

31. As part of this scheme to malign Mr. Walter, various entities, such as the Vidocq Society (prominently featured in this article) were given "24 hours" to thoroughly evaluate this article and provide any commentary. This rushed and unrealistic time requirement was done solely so Herbert could claim "fairness" while making it impossible for anyone to properly and fully respond to the multiple misleading and false claims in this article.

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

10
_____
WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

32. The defendants' malicious claim that Mr. Walter is a fraud intentionally ignored all of the easily obtainable proof of Mr. Walter's decades of expertise and insightful work in scores of cold cases that have brought the most dangerous criminals to justice; this was done so because these defendants entertained serious doubts as to the truthfulness of their "fraud" claims.

33. With a punitive stroke of the pen, defendant Herbert destroyed Mr. Walter's reputation and legacy with the malicious article "[T]he Case of the Fake Sherlock," with the headline comment:

> Richard Walter was hailed as a genius criminal profiler at murder trials, at forensic conferences, and on true-crime TV. In reality, he was a fraud. How did he get away with it for so long?

34. Soon after this knowingly false and misleading article was published, and virally spread throughout the internet, the American Academy of Forensic Sciences (AAFS) was given the article from an unknown source, and its Ethics Committee began an investigation.

35. As noted in Exhibit "B," the AAFS Ethics Committee wrote "[W]hen the Ethics Committee members read the article, we all thought that we would be recommending some sort of sanction."

36. Fortunately for Mr. Walter and those who were misled by this article, the AAFS Ethics Committee conducted a proper investigation – as opposed to the biased and flawed "investigation" done by Herbert – and concluded:

> By the time we (the AAFS Ethics Committee) finished our investigation, we all thought that the complaint should be dismissed. The article accuses the Respondent of fraud and also makes the Academy appear ineffective for not sanctioning him as a result of two previous complaints.

> Exhibit "B", p. 1 (AAFS identity added for clarity).

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA  19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

11
_____
WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

37. The AAFS Ethics Committee's summary introduction concludes with "[T]he following are issues that demonstrate that the *New York* article is highly biased and contains factual errors" and identifies verbatim quotes from the Hebert article that are demonstrably false, relying on third parties' statements to substantiate its findings.

38. Herbert has been made well aware of the fact relating to the false light he has intentionally placed Mr. Walter, both before the initial publication, upon receiving the comments to the article correcting his manifest lies, and upon receipt of the AAFS report, attached to the initial complaint. Yet, in violation of any journalistic ethics, Herbert has refused to correct, modify, and acknowledge the errors in this publication, instead re-posting the article in its original, malicious form.

39. The reality is that defendant Herbert and *New York* magazine are the ones who have perpetrated a fraud upon all of its readers and those poisoned by the viral nature of this exploitative piece.

40. Aside from a clear disregard for due diligence, the defendants' publication and republication is a malicious attack upon the character of a dedicated forensic psychologist. It is an unfortunate, but all too accurate, statement to say that these defendants value reckless, provocative articles in spite of knowing the truth.

41. These defendants had absolutely no basis for reporting that Mr. Walter lied about lecturing at Scotland Yard, working with the FBI, or even working deeply disturbed psychopaths at the Michigan Department of Corrections. Instead, using Mr. Walter's mistaken testimony about his experience at the Los Angeles County Medical Examiner's office, these defendants fabricated a series of misleading and knowingly wrong statements to mislead its readers about Mr. Walter, and to place him into a false light to forever harm his reputation.

**THE BEASLEY FIRM, LLC**
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

12
_____
WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

42.     The defendants further refused to reference significant cases in which Mr. Walter's expertise resulted in convictions of murderers who have destroyed families, including his work with *The Parents of Murdered Children*, and in particular Mr. Walter's work with the Meyer family in Florida.  The intentional omission of critical facts like this, well known to Herbert, is further evidence of his malice and desire to twist the facts to harm Mr. Walter.[3]

43.     These defendants' intentional disregard and suppression of critical facts that had revealed to them and would reveal to the average reader that Mr. Walter was not a fraud, and that the charge that he was, was a completely baseless one, confirms that this misconduct rises well beyond mere negligent reporting and was done with actual malice and with reckless disregard for the truth.  See, e.g., Moore v. Vislosky, 240 Fed. Appx. 457, 469 (3d Cir. 2007) ("[defendant's] awareness that there was no basis for making the specific allegations of wrongdoing that were leveled against [plaintiffs]," if proven, would establish actual malice).

44.     Herbert's evidence of his recklessness and malice is further evidenced by his disdain for the truth regarding Mr. Walter; his failure to disclose the facts known to him before the initial publication, upon republication after reading the irrefutable facts in the commentary, and upon receipt of the AAFS report with supporting documentation that directly contradicts Herbert's attacks on Mr. Walter, including the accusation that Mr. Walter has "pulled a con."

45.     Herbert's ill will towards Mr. Walter is obvious due to his failures to disclose facts that contradicted the article prior to its initial publication, and certainly

---

[3] Herbert, rather than acknowledging that his flawed premise was belied by facts known to him and chronicled in a book *The Murder Room* by Michael Capuzzo, and Mr. Walter's work with the Vidocq Society, intentionally excluded from his article scores of examples of Mr. Walter's expertise and successes – much done for free – to ensure his false light campaign to destroy Mr. Walter would succeed.

13

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA  19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

after Herbert was informed by the commentary to the article, the AAFS report, and other facts that the article's premise and presentation of Mr. Walter was wrong. Herbert's common law malice is apparent throughout the article.

46. Herbert's actual malice is further evidenced by the facts identified in this complaint, known to Herbert, that his claims were false. Herbert didn't just entertain "serious doubts" as to the truth of his article – he indeed had a high degree of awareness that what he wrote was false and misleading, with nondisclosed facts designed to mislead the reader and proves that Herbert acted with a high degree of awareness that the article was false – before it was initially published, after his review of the commentary correcting his mistakes, after receipt of the AAFS report with exhibits, and and upon republication of the exact piece without any changes as mandated by the standards of journalistic ethics attached as exhibit "D."

## V. THEORY OF LIABILITY/CAUSE OF ACTION

### COUNT I
### FALSE LIGHT
### PLAINTIFF v. DEFENDANTS

47. Plaintiff incorporates herein by reference each and every preceding paragraph of this Complaint as if each were set froth fully herein.

48. Defendants Herbert and New York Magazine engaged defendant Herbert as an agent (actual, ostensible, or otherwise), servant, and/or employee, and published the above-mentioned articles with its statements, innuendos and implications to individuals in Susquehanna County, Pennsylvania, the tristate area, the nation, and the world, who understood the statements, innuendos and implications to place Mr. Walter in a false light with the general public.

49. The aforementioned false light in which Mr. Walter was placed would be

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

14
_____
WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

highly offensive to a reasonable person.

50. As described above, the defendants had knowledge of, or acted in reckless disregard as to, the falsity of the matter they communicated and the false light in which Mr. Walter was placed.

51. Herbert knew and withheld from the readers that Mr. Walter and his skills as relating to crime scene assessment, and the research conducts that resulted in peer reviewed articles, has helped solve decades old cases, including the 18 year old *List* murders.

52. Hebert knew and withheld from his readers that Mr. Walter's application of the behavior known as "picquerism" in certain case types is an accepted, peer reviewed, well understood subset of behaviors of the murderer in the Anger-Excitation Rape-Murder crime classification.  Herbert further knew that Mr. Walter, with colleagues, has published peer-reviewed literature on this, yet he withheld this from the readers, relying on an obviously flawed and court opinion.

53. Herbert further knew that Walter has published peer reviewed studies on Picquerism, yet Herbert mislead the readers into believing that Walter's application of the concept of Picquerism was unsupported by any scientific literature or evidentiary support.  Herbert was further informed by the commentary to this article that his misleading claims of picquerism were wrong, yet he did nothing to correct this obviously false and misleading presentation of Mr. Walter.

54. Herbert's false presentation of Mr. Walter's work in the Michigan State Prison System and Michigan State University – when he knew his claims as to both were false – was withheld from the readers in order to discredit the basis upon which Mr. Walter developed much of his expertise.   Herbert's refusal to disclose the truth of Mr.

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

15
_____
WALTER V. HERBERT, ET AL.
AMENDED COMPLAINT

Walter's early experience with violent offenders and murders was done with the purpose of misleading the readers into believing Mr. Walter had lied about those facts. Herbert knew that Walter's work history in Michigan was accurate.

55. Herbert's violation of the *Society of Professional Journalists' Code of Ethics*, Exhibit "D," both prior to the initial publication and after he was revealed as a misleading author, is further evidence of these defendants' malice, intent to harm, and reckless journalism.

56. The publication has caused Mr. Walter irreparable harm to his reputation and business as well as mental suffering, shame, humiliation, physical and emotional distress.

57. As a direct and proximate cause of the Defendants' malicious, intentional, or reckless conduct as set forth above, Mr. Walter is entitled to such damages that will compensate for his injuries, including punitive damages to punish the Defendants for their conduct, and deter them and others similarly situated from similar acts in the future.

58. Mr. Walter seeks compensatory and punitive damages as a result of the defendants' deliberate, reckless and outrageous conduct set forth above.

**WHEREFORE**, Plaintiff demands judgment against all defendants, jointly, severally and/or individually, in an amount substantially in excess of the jurisdictional limit, compensatory damages, punitive damages, attorneys' fees, costs and interest, together with any further relief which this Court deems just and appropriate under the circumstances.

**THE BEASLEY FIRM, LLC**
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

16
_____
**WALTER V. HERBERT, ET AL.**
**AMENDED COMPLAINT**

## NOTICE OF PRESERVATION OF EVIDENCE

PLAINTIFF HEREBY DEMANDS AND REQUESTS THAT DEFENDANTS TAKE NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS, COMMUNICATIONS, WHETHER ELECTRONIC OR OTHERWISE, ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS CONTROL, OR FROM WHOM ANY PARTY TO THIS ACTION HAS ACCESS TO, ANY DOCUMENTS, ITEMS, OR THINGS WHICH MAY IN ANY MANNER BE RELEVANT TO OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR THE ALLEGATIONS OF THIS COMPLAINT.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of six.

**THE BEASLEY FIRM, LLC**

BY: /s/ James E. Beasley Jr.
JAMES E. BEASLEY, JR.
THE BEASLEY BUILDING
1125 Walnut Street
Philadelphia, PA 19107
215.592.1000
215.592.8360 (telefax)
Dated: 15 March 2024        Attorneys for Plaintiff

**THE BEASLEY FIRM, LLC**
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

17

**WALTER V. HERBERT, ET AL.**
**AMENDED COMPLAINT**

**THE BEASLEY FIRM, LLC**
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all parties of record via the Court's electronic filing system.

|  |  |
|---|---|
|  | **THE BEASLEY FIRM, LLC** |
|  | BY:  /s/ James E. Beasley Jr. |
|  | JAMES E. BEASLEY, JR. |
|  | THE BEASLEY BUILDING |
|  | 1125 Walnut Street |
|  | Philadelphia, PA 19107 |
|  | 215.592.1000 |
|  | 215.592.8360 (telefax) |
| Dated:  15 March 2024 | Attorneys for Plaintiff |